IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| **LUGGAGE HANDLERS, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action: _____ |
| | § | |
| **LUGGAGE FORWARD, INC.,** | § | |
| *Defendant.* | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff LUGGAGE HANDLERS, INC. ("Plaintiff"), through its attorney, complains of LUGGAGE FORWARD, INC. ("Defendant"), and for its cause of action, would respectfully show the Court:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's claims under 28 USC §1331 as both the Sherman Act and Clayton Act are Federal statutes.

2. Defendant conducts and solicits business throughout Texas—including the region of the Eastern District of Texas—making this Court an appropriate venue.

## THE PARTIES

3. Plaintiff Luggage Handlers, Inc. is a Texas-based corporation located at 14655 Northwest Freeway Suite 134 Houston, TX 77040.

4. Defendant Luggage Forward, Inc. is a Delaware corporation, with its principal place of business at 100 Franklin Street, Suite 201, Boston, MA 02110.

## STATEMENT OF FACTS

5. Plaintiff Luggage Handlers, Inc. operates through an Internet website at www.luggagehandlers.com. Their primary business is the specialty shipment of luggage and sports equipment from an individual's point of origination (typically the individual's home) to their ultimate destination.

6. The specialty shipment of luggage is a discrete market composed of consumers seeking to avoid the varied problems of transporting their own luggage through airlines. Essentially, the consumer is freed from the burden of marshalling their luggage while traveling. The consumer can focus on the travel experience, without the hindrance of large, self-carried luggage.

7. Defendant Luggage Forward, Inc. operates in substantially the same manner as Luggage Handlers. The Luggage Forward site allows consumers to arrange transport of their luggage from their point of origin to the ultimate destination.

8. Luggage Forward has grown in significant part through the acquisition of other market players. Each entity acquired provided service in the same general geographic market (the U.S. and international locations), with service provided or scheduled through the Internet or telephone. Although an entity may have had a larger customer base in one geographic area or another, all entities provided service on a domestic and international level, and therefore, were in direct competition with each other.

9. In 2009, Luggage Forward acquired five competitors: Sports Express, Baggage Quest, Luggage Advance, My Luggage Express, and Virtual Bellhop.

10. In 2011, Luggage Forward acquired Ship Luggage.

11. In 2012, Luggage Forward acquired the Luggage Club.

12. In 2014, Luggage Forward acquired Lug Less, at that time the third-largest competitor in the market behind Luggage Forward and Luggage Free.

13. After acquiring Lug Less, it is estimated Luggage Forward now controls 75% of specialty luggage shipping volume, and about 70% of market revenues.

14. Each acquisition was a horizontal merger because it occurred between two companies at the same level in the chain of distribution regarding the service (specialty luggage shipping), and operating in the same geographic market.

## **VIOLATION OF SHERMAN ACT**

15. Section 2 of the Sherman Act ("Sherman"), codified at 15 U.S.C. §2 (1997), makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations."

16. While a monopoly acquired through the sale of superior product or service is permitted, a monopoly obtained through acquisition is not allowed. Luggage Forward has seized a monopoly by acquiring its competitors in violation of Sherman §2.

17. *United States v. Grinnell Corp.*, 384 U.S. 563 (1966) defines the Plaintiff's burden: "(1) The possession of monopoly power, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of superior product, business acumen, or historic accident." *Id.* at 570-571.

18. The first requirement is met by Luggage Forward's post-acquisition market position: 75% of specialty luggage shipping by volume, and 70% of market revenues.

19. The second requirement is met through conduct: not only were the acquisitions "willful," but Defendant seeks to maintain their monopoly through exclusionary practices to artificially control search engine results and pay-per-click advertising.

## VIOLATION OF CLAYTON ACT

20. Section 7 of the Clayton Act ("Clayton"), codified as 15 U.S.C. §18, provides "No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, *the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.*" (Emphasis added.)

21. Plaintiff asserts Defendant has engaged in violative conduct by obtaining monopoly power through acquisition of its competitors. The increase in market power resulting from these illegal mergers gives Defendant the ability to act anti-competitively, which Clayton §7 stands to deter.

22. In *FTC v. Procter & Gamble Co*. 386 U.S. 568 (1967), the Supreme Court ruled a barrier to entry exists, and competition is negatively affected, where a Defendant's conduct inhibits competitors through domination of marketing and advertising channels. Incumbent firms inhibit new competitors by spending heavily on advertising (or having the ability to do so)

in a way that restricts availability of advertising to other competitors. New firms cannot afford access to the marketing or advertising channels, and thus a barrier to entry exists.

23. On December 9, 2015, Plaintiff conducted a Google search using the most common search phrases—"luggage shipping companies" and "luggage shipping services." On the first two result pages, there were 10 available non-paid listings—7 of which were occupied by Defendant and Defendant's defunct affiliates' websites. For a legitimate competitor to appear on the first page of a search they would have to pay Google over $500 per day or $15,000 per month. Put another way, to overcome Defendant's monopolistic practices, a competitor must pay a premium of $15,000 per month to achieve market exposure. This is conduct of the type expressly found to be violative in *FTC v. Procter & Gamble Co.*

24. Plaintiff also asserts the market concentration resulting from Defendant's acquisitions will more easily lead to interdependent oligopoly pricing effects. Since the transactions between consumers and Defendant are sporadic and via the internet, the pattern of sales is both infrequent and confidential. These conditions are primary factors under the FTC's 2010 Horizontal Merger Guidelines. U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines (2010) [hereinafter 2010 Guidelines], available at http://www.ftc.gov/os/2010/08/100819hmg.pdf.

25. Plaintiff need only demonstrate the possibility of such affects arising in the future, not that they have already occurred. Section 2.1.1 of the 2010 Guidelines, stating: "When evaluating a consummated merger, the ultimate issue is not only whether adverse

competitive effects have already resulted from the merger, but *also whether such effects are likely to arise in the future*." [Emphasis added].

## STANDING

26. Luggage Handlers has standing under Clayton §16 (15 U.S.C. §26) which provides "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue."

## PLAINTIFF'S INJURY

27. Plaintiff Luggage Handlers asserts it has been damaged by the violative conduct of Defendant in the creation and maintenance of a monopoly in violation of the Sherman §2 and Clayton §7.

28. Specifically, Plaintiff alleges Defendant has engaged in exclusionary, anti-competitive conduct resulting in artificial barriers to entry. Exclusionary conduct is defined by *Griffin*

as any attempt *"to foreclose competition, to gain a competitive advantage, or to destroy a competitor."* United States v. Griffin, 334 U.S. 100 (1948). Here, the exclusionary conduct is the continued internet presence of each acquired competitor which results in two anti-competitive results: (1) Competitors are pushed beyond the second page of search results (and thus rendered irrelevant); and (2) competitors face crushing increases in pay-per-click advertising cost to maintain parity.

29. Plaintiff's injuries are the kind anti-trust laws were designed to prevent. *Brunswick v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477 (1977); *Cargill, Inc. v. Montfort of Colorado, Inc.*, 479 U.S. 104 (1986).

30. The statute of limitations accrues as soon as the plaintiff has suffered ascertainable injury. This means that even if the injury is known, the limitations period does not commence so long as the extent of damages would be speculative. *See Zenith Radio Corp. v Hazeltine Research, Inc.*, 401 U.S 321, 338-342 (1971).

31. Since Plaintiff Luggage Handler's injury was speculative until market entry, the entirety of Defendant's acquisition spree should be considered in determining unlawful conduct and calculation of damages.

32. In the alternative, the latter two acquisitions by Defendant (Luggage Club and Lug Less) are within the four year limitations period provided by 15 USC §15b.

## **PRAYER FOR RELIEF**

33. Plaintiff requests this Court: (1) Restrain Defendant from further acquisitions of firms competing in the specialty luggage delivery marketplace; (2) Order the Defendant divest itself of its acquisition of Lug Less and Luggage Club; (3) Order Defendant disgorge overcharges resulting from anti-competitive practices; (4) Order Defendant compensate Plaintiff for the increase in pay-per-click advertising for 24 months, including adjustments as necessary to maintain parity with Defendant's position on the first-page of search results; (5) Order Defendant compensate Plaintiff for attorney's fees and court costs in bringing this action; (6) Order all damages be trebled as provided by statute.

Respectfully Submitted,

BY: _Robert Jewett_

Robert Jewett
State Bar No.:   24089620
11942 Riverview Drive, Suite 100
Houston, TX   77077
Telephone:   (281) 810-8715
E-mail:   Robert@JewettLaw.net
ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January, 2016, a true and correct copy of this Complaint was mailed, with all attachments, postage paid, with delivery confirmation to:

| Keith Kirley, President | Aaron Kirley | Zeke Adkins |
| --- | --- | --- |
| Luggage Forward, Inc. | Luggage Forward, Inc. | Luggage Forward, Inc. |
| 100 Franklin Street, Suite 201 | 100 Franklin Street, Suite 201 | 100 Franklin Street, Suite 201 |
| Boston, MA 02110 | Boston, MA 02110 | Boston, MA 02110 |